UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RAMAR DANIELS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00117-TWP-MPB |
| | ) | |
| DENNIS REAGLE, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Ramar Daniels' petition for a writ of habeas corpus challenges his conviction in prison disciplinary case ISR 20-08-0129. For the reasons explained in this Order, Mr. Daniels' petition is **denied**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

1

**B. Disciplinary Proceeding**

On August 16, 2020, Officer Chappell wrote a report of conduct charging Mr. Daniels with a violation of Indiana Department of Correction Adult Disciplinary Code B-251,[1] interfering with count:

> On 8-16-20 at approx 06:25 am I Officer D. Chappell was counting 5F Range. Cell 22-5F Jch Offender Daniels Ramar has a drape across the inside of cell 22-5F Jch. I Ofc Chappell have told offender Daniels 104542 to remove the drape because we can not see him behind the drape. Offender refuses to remove the drape inside of cell 22-5F Jch.

Dkt. 7-1.

Mr. Daniels was notified of the charge on August 19, 2020. Dkt. 7-2. He pled not guilty and did not request any witnesses. *Id.* He requested written protocols on count procedures and on reporting to a supervisor and an email he sent to the ombudsman on August 15, 2020. *Id.* This requested evidence was denied as irrelevant, and the screening report noted that there was "no access to ombudsman." *Id.*

Prior to the hearing, the disciplinary hearing officer (DHO) reviewed the video of the incident, even though Mr. Daniels did not request it as evidence. The DHO wrote a summary of the video:

> For case ISR 20-08-0129 I, Sgt. C. Cooke, did note
>
> > 6:27:02 AM Officer Chappell on range heading to cell 22-5F which clearly has a blanket hanging across the cell front. (Photograph printed, offender can view)
> >
> > 6:27:06 AM Officer Chappell speaks to whomever is on the other side of blanket in cell 22-5F

---

[1] The Court notes that the report of conduct also has code number 209, impairment of surveillance listed. Dkt. 7-1. However, Mr. Daniels' petition concerns a conviction for violation Code B-251. Dkt. 1. The respondent states that the hearing report "clearly shows that Daniels was found guilty of interfering with count in violation of Code B-251. The Offender Information System Conduct Detail also reflects that the conviction was for a Code B-251 violation." Dkt. 7 at 2 n.1.

2

> 6:27:26 Officer Chappell pushes the "knots" of the corners in through cell
> so blanket will fall. (Photograph printed, offender can view).

Dkt. 7-5. The DHO noted that there was audio for the video. *Id.* The video is not included in the record. The respondent notes that the facility did not preserve the video after the hearing because Mr. Daniels did not request it as evidence. Dkt. 7 at 3. The record does include still shots from the video with the time stamps referenced in the video summary, but the Court notes that the still photos are not particularly helpful to illustrate the events. Dkt. 7-6.

Mr. Daniels' disciplinary hearing was postponed four times due to COVID-19 response. Dkt. 7-3. His hearing was held on September 25, 2020, and Mr. Daniels requested a continuance at the hearing because he wanted the blanket to be produced as evidence. Dkt. 7-4. This request was denied because the blanket was never confiscated. *Id.* Mr. Daniels commented that he did not request video evidence and that the conduct report called it a "drape" and said it was "in the cell." *Id.* Mr. Daniels stated: "Whatever, I'll have fun with that in court!" *Id.* The disciplinary hearing officer (DHO) indicated on the hearing report that Mr. Daniels smelled strongly of intoxicants and that his eyes were glazed over. *Id.* The DHO indicated that when Mr. Daniels became argumentative, the hearing was concluded. *Id.* The DHO considered staff reports, Mr. Daniels' statement, and the physical evidence of the video showing the drape inside the cell on the bars and found Mr. Daniels guilty. *Id.* The DHO wrote: "Conduct is clear. Mentions 'drape' in cell. Video & still shot shows a 'drape' a.k.a. blanket on the inside of his cell bars. Blanket was never confiscated. Policy/Procedure for count is actually to see the offender, which officer could not complete because offender had 'drape' over inside of bars." *Id.* His sanctions included deprivation of earned credit time. *Id.*

Mr. Daniels' administrative appeals were unsuccessful. Dkt. 7-7; dkt. 7-9. He then filed this petition for a writ of habeas corpus. Dkt. 1.

### C. Analysis

Mr. Daniels raises the following grounds in his petition: (1) there was insufficient evidence to support this charge, (2) he was denied evidence, and (3) the DHO was not impartial. *Id.*

#### 1. Sufficiency

Mr. Daniels claims he is not guilty. His arguments regarding sufficiency of the evidence turn on alleged discrepancies between the conduct report's use of the word "drape," and later the DHO's use of the word "blanket" to describe the item covering the cell. Dkt. 1; dkt. 8. Mr. Daniels also points to discrepancies that the conduct report said the drape was found "inside" the cell but not on the front cell bars like the video summary described. Dkt. 8. He also argues that the photos were not taken at his cell. Dkt. 1. And, he argues, when an officer cannot get a correct count, "he has to call his boss," and Officer Chappell did not call for any assistance during this count. *Id.*

Courts may not reweigh evidence already presented at a prison disciplinary hearing. *Viens v. Daniels*, 871 F.2d 1328, 1328 (7th Cir. 1989). Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The conduct report "alone" can "provide[ ] 'some evidence' for the  . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Nonetheless, in a safeguard

against arbitrary revocation of an inmate's good-time credits, a court must "satisfy [itself] that the evidence the board did rely on presented 'sufficient indicia of reliability.'" *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). To challenge the reliability of evidence introduced during a prison disciplinary hearing, there must be "some affirmative indication that a mistake may have been made." *Webb v. Anderson*, 224 F.3d 649, 653 (7th Cir. 2000).

Code B-251 prohibits an offender from "[f]ailing to stand count, being late for count, or interfering with the taking of the count." Dkt. 7-9. Here, the conduct report alone provides some evidence to support the DHO's decision. The conduct report explicitly states that Mr. Daniels covered his cell so that he could not be seen for count – it is of no consequence what material was used to cover the cell. Officer Chappell further reported that he instructed Mr. Daniels to remove the covering, but that he refused to do so. This conduct interfered with Officer Chappell's ability to conduct count because offenders must be able to be seen while count is being taken. This type of interference meets the definition of the code violation. To the extent that Mr. Daniels argues that the count was not affected because it was completed, this is unpersuasive. Under the code, one could "interfere" with count even though count was eventually completed.

Accordingly, the conduct report provides "some evidence" to support the charge, and Mr. Daniels is not entitled to relief on this ground.

### 2. Denial of Evidence

Mr. Daniels argues that he was denied "all the evidence he requested for his defense." Dkt. 1 at 5. The Court construes that Mr. Daniels is referring to his request for the protocols on count procedures, an email he sent to the ombudsman the day before the conduct report was written, and the actual drape or blanket. As it relates to the blanket, the DHO confirmed at the hearing that this

was not confiscated. Thus, this evidence could not be provided, as prison officials cannot violate due process by failing to produce evidence they do not have.

The other evidence was denied as irrelevant. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id*., and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 681 F. App'x 494, 497 (7th Cir. 2017) (quoting *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003)). As the petitioner, it is Mr. Daniels' burden to establish that any evidence he was denied was material and exculpatory. *See Piggie,* 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness). Mr. Daniels has not met this burden.

First, he argues that his email to the ombudsman would show that Officer Chappell told him that he was going to find something to write him up about. Dkt. 8. He claims this evidence would show that Officer Chappell intended to lie in a conduct report. But, such email which predated this conduct report, while it may contain Mr. Daniels' speculation about future events, would not concern actual evidence about what occurred during count or whether or not Mr. Daniels covered his cell.

Second, Mr. Daniels does not explain how the count protocols would have aided him in his defense. In his reply, he indicates that if Officer Chappell had a problem with count that day, he

would have to call his supervisor for assistance. *Id.* To the extent that Mr. Daniels attempts to argue that this evidence would show that facility policies or procedures regarding count were not followed, it is immaterial because policy claims are not cognizable on habeas review. Prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy, such as the ones at issue here, are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process."); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import – and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

Because Mr. Daniels has not shown that he was denied material and exculpatory evidence, he is not entitled to habeas relief on this ground.

### 3. Impartial DHO

Mr. Daniels argues that he has a pending lawsuit against the DHO for lying in other disciplinary cases.[2] Dkt. 8. He claims in this case the DHO acted as an investigator as well as a

---

[2] Mr. Daniels identified the case number he is referring to in his reply brief, *Daniels v. Cooke*, No. 1:20-cv-01752-JMS-TAB. This civil rights action was filed on June 29, 2020, and Mr. Daniels amended his complaint on September 25, 2020—the same date of his disciplinary hearing in this action. The Court screened Mr. Daniels amended complaint at docket 16, in that action, and his allegations included allegations that the DHO retaliated against him for filing grievances—she first found him guilty of threatening in a prison disciplinary proceeding and then found him guilty of assault. While it appears that Mr. Daniels was granted relief from those disciplinary convictions,

decisionmaker when she compiled a video review and summary. *Id.* He argues that he did not ask for video evidence or photos, and that the DHO reviewed video to retaliate against him. *Id.* He also claims he was denied a hearing. Dkt. 1.

A prisoner in a disciplinary action has the right to be heard before an impartial decision maker. *Hill*, 472 U.S. at 454. However, hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the prison. *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Daniels has not provided clear evidence to rebut the presumption that the DHO was impartial. It is within the purview of the DHO to review video or photographic evidence regardless of whether a petitioner makes a request for that evidence. It is also within the role of the DHO to prepare a video summation in preparation for a disciplinary hearing. Mr. Daniels has not shown that the DHO was directly or substantially involved in the factual events of what happened during count that is the basis of the conduct report. Mr. Daniels merely states that Officer Chappell and the DHO were "friends," but this statement does not provide evidence that the officers were in engaged in any disqualifying relationship that would establish impartiality. *See, e.g., Eads v.*

---

the Court notes that those disciplinary proceedings referenced in that civil rights action do not relate to his charge here of interfering with count.

*Hanks*, 280 F.3d 728, 729 (7th Cir. 2002) (noting that a prisoner's due process right to an impartial decision-maker might be violated if the officer on the review board was engaged in an intimate, romantic relationship with one of the witnesses crucial to the prosecution.). Mr. Daniels provides no evidence that he was denied a hearing; rather, the DHO noted that his conduct at the hearing, namely his appearance of being intoxicated and his argumentative nature, caused her to terminate the hearing when it was no longer beneficial. *See* dkt. 7-4. Specifically, the DHO noted that Mr. Daniels would not stay focused, smelled like intoxicants, was flippant, just wanted to argue, and the hearing was concluded when his behavior became erratic. *Id.*

Mr. Daniels is pursuing a civil rights action against the DHO, but he has not established that that action is related to this disciplinary hearing or conviction. To the extent that Mr. Daniels claims that the DHO retaliated against him at this hearing, his argument fails. "Prisoners have a right to be free from retaliation by prison officials but . . . the procedural requirements of *Wolff* adequately protect prisoners from fraudulent charges." *Wilson v. McBride*, 93 F. App'x 994, 996 (citing *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999); *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987)). Mr. Daniels has not demonstrated a due process violation, so "his retaliation claim also fails." *Id.*

Accordingly, he is not entitled to habeas relief on these grounds.

**D. Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Daniels to the relief he seeks.

Accordingly, Mr. Daniels' petition for a writ of habeas corpus must be **denied** and the **action dismissed.**

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date:   11/2/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

RAMAR DANIELS
104542
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Marjorie H. Lawyer-Smith
INDIANA ATTORNEY GENERAL
marjorie.lawyer-smith@atg.in.gov